UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

PAYPAL, INC.,

                Plaintiff,

      v.

PANDORA MEDIA, INC.,

                Defendant.

——————————————————————x

No. 17-cv- _____

**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND FALSE DESIGNATION OF ORIGIN**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................... 3

Jurisdiction and Venue ................................................................................... 8

The Parties ....................................................................................................... 9

PayPal's Focus:  Customer Champion ........................................................... 9

Customers' Increasing Focus on Mobile Commerce .................................. 10

PayPal's Iconic "P" Logo ............................................................................ 11

Pandora's Infringing and Diluting "P" Logo .............................................. 15

The Harm to PayPal's Customers and Brand ............................................. 20

PayPal's Attempts to Resolve This Dispute Amicably .............................. 29

COUNT ONE
(False Designation of Origin  Under Section 43(a) of the Lanham Act,
15 U.S.C. § 1125(a)) ..................................................................................... 29

COUNT TWO
(Trademark Dilution Under the Trademark Dilution Revision Act,
15 U.S.C. § 1125(c)) ..................................................................................... 30

COUNT THREE
(Trademark Infringement Under New York Common Law) ....................... 31

COUNT FOUR
(Trademark Dilution  Under New York Law, N.Y. G.B.L. § 360-l) ........... 31

PRAYER FOR RELIEF ................................................................................ 32



Plaintiff PayPal, Inc. ("PayPal") – owner of the iconic logo on the left – for its complaint against Pandora Media, Inc. ("Pandora" or "Defendant") – owner of the unlawfully similar new logo on the right – alleges:

**<u>Preliminary Statement</u>**

1.      PayPal has built the world's leading digital payments platform by championing the interests of its customers.  Pandora's recent adoption of a new "P" logo, which is unlawfully similar to PayPal's logo, threatens the interests of PayPal's customers and disrupts their user experience.  PayPal brings this action to remedy the harm Pandora is causing to the PayPal user experience and the PayPal brand.  These third-party social media posts exemplify the problems that Pandora's new logo is causing:





2.      PayPal has worked relentlessly to make the PayPal payments platform easy and

reliable for customers to access and use.  PayPal designs each and every step of the user

experience with intense attention to reducing friction for the user.  Customers have responded by

embracing the platform in enormous numbers.

---

[1]     Identifying details of the social media users have been redacted for their privacy.  These
        social media posts were acquired from public sources.

3.     The frictionless user experience for PayPal customers starts with PayPal's famous "P" logo (the "PayPal Logo").  The central features of this iconic logo include capital Ps depicted in a distinctive, block-style sans serif type, with no "counter" or hole in the top part of the P, and the use of PayPal's familiar deep-blue color range.  One critically important function of the PayPal Logo is to stand out on the crowded screens of customers' smartphones and tablets, where the logo guides customers quickly and surely to the PayPal payments platform.  PayPal has invested heavily in the PayPal Logo since its introduction.  The PayPal Logo has rapidly achieved significant fame and consumer recognition as a result.

4.     Pandora has interfered dramatically with PayPal users' experience through the adoption of a new logo in October 2016 (the "Pandora Logo"), which not only resembles, but openly mimics the PayPal Logo.  Element by element and in overall impression, the similarities between the logos are striking, obvious, and patently unlawful.  Just like the PayPal Logo, the Pandora Logo is a capital P in block style, sans serif, with no counter, in the same deep-blue color range.  And just like the PayPal Logo, the Pandora Logo plays the critical role of serving as an identifier on customers' mobile devices, guiding them to the PayPal payments platform.

5.     It therefore comes as no surprise that the Pandora Logo is confusing, frustrating, and delaying consumers in their efforts to locate and use the PayPal payments platform when they are met with two nearly identical logos.  Just as importantly, the Pandora Logo is causing the status of the PayPal Logo as a unique identifier of the PayPal brand to be blurred.  Without any prompting from PayPal, consumers themselves have publicly complained about the impact on their user experience since the launch of the Pandora Logo last fall.

6.      This harm to consumers and to the PayPal brand did not have to happen.  For many years, Pandora used a form of "P" logo that looked nothing at all like PayPal's.  When

Pandora decided to refresh its logo in late 2016, Pandora had countless options available. Pandora has publicly admitted that it considered over one thousand alternative "P" logos as part of its refresh process.  Faced with these ample choices, however, Pandora deliberately chose to adopt a logo that was obviously too similar to PayPal's.  This blatantly pirates the goodwill developed by PayPal in the PayPal Logo.  The harm being caused here is a direct result of Pandora's deliberate choices.

7.      This lawsuit also did not have to happen.  When customers began to complain about the Pandora Logo, PayPal immediately raised their concerns with Pandora in a private and businesslike manner.  Through a series of letters and conversations, PayPal documented these concerns and asked Pandora to revise the Pandora Logo.  Pandora did nothing.  PayPal is left with only one option to protect its all-important mission of providing customers with a seamless user experience:  to bring this action for trademark infringement, trademark dilution, and false designation of origin.  Simply put, PayPal's core business mission is to be a Customer Champion.  This lawsuit is in direct furtherance of that mission.

**Jurisdiction and Venue**

8.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1121 and

28 U.S.C. §§ 1331, 1338, and 1367.  PayPal's claims are based, in part, on violations of the

Lanham Act, as amended, 15 U.S.C. §§ 1051-1127.  This Court has jurisdiction over the state-

law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

9.      Personal jurisdiction over Defendant is proper pursuant to N.Y. C.P.L.R. § 302(a).

Upon information and belief, Defendant regularly has solicited business in the State of New

York and in this District, has transacted and done business in the State of New York and in this

District, has wrongfully caused injury to PayPal in the State of New York and in this District,

and derives substantial revenue from interstate commerce.  In particular, without limitation and

upon information and belief, Pandora has promoted its apps and website within New York; has

provided its music streaming services to many thousands, if not millions, of New Yorkers; and

has sold gift cards and subscriptions to its paid service to many New Yorkers.  Pandora

maintains an office in this District, which on information and belief houses more than 200

employees, including a number of senior executives and members of Pandora's teams in the

areas of Sales, Sales Leadership, Artist Programming & Partnerships, Events, Design, Finance,

Business Development, Human Resources, and Information Technology.  Pandora is registered

to transact business in the State of New York with the New York State Department of State, and

trades on the New York Stock Exchange.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(b), (c) and (d), because a

substantial part of the events and omissions giving rise to the claims occurred in this District and

because Defendant is subject to personal jurisdiction in this District.  In particular, without

limitation and upon information and belief, Pandora has regularly promoted its Pandora Logo in

this District, and thousands of downloads of the Pandora app featuring the infringing mark have occurred in this District.

## The Parties

11.     PayPal is a corporation organized and existing under the laws of the State of Delaware with offices at 2211 North First Street, San Jose, California 95131 and 95 Morton Street, New York, New York 10014, among other locations.

12.     Upon information and belief, Pandora is a corporation organized under the laws of the State of Delaware with offices at 2101 Webster Street, Suite 1650, Oakland, California, 94612 and 125 Park Avenue, 19th Floor, New York, New York 10017, among other locations.

## PayPal's Focus:  Customer Champion

13.     PayPal dates back to 1998.  It began using the name PayPal in connection with certain products in 1999, and adopted the PayPal name for the company in 2002.  By the end of March 2017, PayPal had 203 million active customer accounts in over 200 markets around the world.  Customers receive money in more than 100 currencies, withdraw funds in more than 50 currencies, and hold balances in their PayPal accounts in more than 20 currencies.

14.     PayPal has become the leading global digital payments platform through an intense focus on its customers' interests.  Over the years, PayPal has invested heavily in simplifying and securing the process of making online payments.  Priding itself on being a Customer Champion, PayPal has worked to make its payment-processing services as smooth and frictionless as possible, allowing its users to thrive in the global economy.

15.     Key to PayPal's success is a positive user experience.  Even the slightest delay in locating and using PayPal's payments platform causes customers inconvenience, and degrades PayPal's standing with customers and merchants.  Providing users with a simple, seamless, accessible, and secure payment experience has contributed directly and substantially to the

tremendous goodwill and financial success that the PayPal brand enjoys in New York, the United States, and globally.

16.     The importance of ease of use for customers can be seen through the success PayPal has achieved with its "One Touch" checkout experience, introduced in 2014.  One Touch allows customers to complete purchases faster by staying logged into their PayPal accounts across different merchant sites so they can check out without the need to enter any billing or shipping information.  PayPal's One Touch service has achieved tremendous popularity.  By the end of March 2017, over five million active merchant accounts offered One Touch to more than 53 million active customer accounts across PayPal's markets.

17.     PayPal's connections to New York are strong.  PayPal has approximately 4.5 million active customer accounts in this State.  PayPal has over 100 employees based in New York from several different departments.  PayPal continues to expand its New York presence. For example, in 2015, it signed a multiyear lease for new office space in New York that nearly tripled the size of its previous New York offices.  PayPal is registered with the New York State Department of State to transact business in the State of New York, is a licensed money transmitter registered with the New York State Department of Financial Services, and trades on the NASDAQ Stock Market.

<u>**Customers' Increasing Focus on Mobile Commerce**</u>

18.     In recent years, mobile technology has gained increasing prominence as consumers look to their mobile devices to facilitate every aspect of their lives, including using the devices to shop for everything from clothes and household goods to food, travel and other services and to pay for and facilitate all of those transactions.  According to data from the United States Census Bureau and comScore, in 2014, mobile commerce comprised 11.6% of the $303 billion United States e-commerce total (including all online shopping).  Business Insider

forecasts that mobile commerce will reach a whopping $284 billion, or 45% of the total United States e-commerce market, by 2020.  *See* Andrew Meola, "The Rise of M-Commerce:  Mobile Shopping Stats & Trends" (Dec. 21, 2016), *available at*:

http://www.businessinsider.com/mobile-commerce-shopping-trends-stats-2016-10 (last accessed May 18, 2017).  Businesses, as a result, are racing to develop technology and advanced mobile applications to assist their customers in making these mobile transactions.

19.     To address its customers' growing preferences, PayPal has expended significant resources and efforts on its mobile platform.  In line with PayPal's Customer Champion focus, PayPal has worked diligently to enable customers to make mobile payments that are secure, efficient, and easy to use.  It has conducted in-depth research to understand its consumers' preferences and regularly updates its mobile app to meet all of these criteria.

20.     PayPal's commitment to being a Customer Champion in the mobile space has been exceedingly successful.  Mobile transactions today constitute a significant source of revenue for PayPal.  In the first quarter of 2017, nearly one-third of PayPal's total payment volume across its brands was conducted via mobile devices, with approximately $32 billion in total payment volume on mobile – a 51% increase over the same period in 2016.  In 2016, during the five days between Thanksgiving and Cyber Monday alone, PayPal's brands processed more than $2 billion in mobile payments.

**PayPal's Iconic "P" Logo**

21.     For many years, PayPal has consistently utilized a global portfolio of trademarks that together have helped it earn overwhelming consumer recognition and a commanding share of online payments.  More than 50 of these marks are maintained as trademark registrations and registration applications on the Principal Register of the United States Patent and Trademark Office ("USPTO").

11

22.     The PayPal Logo is the face of the brand, and has been in use since 2014.  It is a centerpiece of PayPal's brand identity both on mobile devices and more generally.  The PayPal Logo has appeared in numerous television, print, billboard, and Internet advertisements, including an advertisement that aired during the 2016 Super Bowl.  Its hallmarks are the minimalist look and feel, sans serif font, the distinctive blue color palette, and the counterless and block-style letter P.

23.     PayPal submitted its application for the PayPal Logo to the Principal Register of the USPTO on April 28, 2014.  The mark "consists of 2 overlapping letters 'P.'  The first 'P' is medium blue, and is superimposed over the second 'P', which is light blue and appears below and to the right of the first 'P.'  The portion of the letters which overlap is dark blue."  On April 29, 2017, the USPTO accepted the statement of use filed for the application, stating that "[t]he USPTO has accepted the Statement of Use filed for the trademark application identified above. The mark will now register and the registration certificate will issue in due course barring any extraordinary circumstances."  PayPal anticipates that the PayPal Logo will be registered on the Principal Register in the coming months.[2]

---

[2]     PayPal anticipates filing an amended complaint upon registration.

24.     The PayPal Logo encompasses the same characteristics – the distinctive blue color palette, sans serif font, and minimalist look and feel – that are shared not only by the PayPal Logo, but across numerous PayPal trademarks, for example:





*See* USPTO Reg. No. 4,757,356 (filed Apr. 29, 2014); USPTO Reg. No. 4,415,442 (filed Jan. 13, 2012); USPTO Reg. No. 4,013,014 (filed Oct. 23, 2009).

25.     The PayPal Logo was meticulously developed to exemplify simplicity, convenience, and security.  Every detail of the design has a specific purpose.  The counters in the Ps were closed to achieve a more compact form that is easier to read.  The color was chosen to infuse energy into the logo and to portray confidence and vitality, while harmonizing with PayPal's longstanding color scheme.  The simple yet sharp geometric pattern was chosen to symbolize technology.  The subtle shading between the tiles creates depth and dimension to show security.  The italic angle conveys forward motion, innovation, and progress.

26.     The PayPal Logo is among the most significant ways in which customers identify the PayPal brand in connection with its services.  Critically, it is the primary way PayPal's customers identify PayPal's apps on their mobile device screens.  PayPal has invested considerable resources advertising and promoting its services under the distinctive PayPal Logo and integrating the mark across its many services.

27.    The PayPal Logo is featured across PayPal's suite of products, including in its app icons, "Pay with PayPal" buttons and website.  In addition, the PayPal Logo is featured on its third-party merchant websites and apps.  Pandora is well aware of this, because it includes the PayPal Logo on the checkout page of Pandora.com:



28.    The success of PayPal's branding for its PAYPAL trademarks, including the PayPal Logo, has been widely recognized around the world.  PayPal has been ranked on numerous top brands lists.  For example, in 2017, PayPal was ranked No. 4 in the Centre for Brand Analysis' Official Top Business Superbrands list.  In 2016, PayPal was ranked No. 15 in Prophet's Top 50 Brand Relevance Index, No. 19 in Fortune's Change the World ranking, No. 20 in Cohn & Wolfe's Global Authentic 100 Index, No. 25 in the Reputation Institute's UK RepTrak 100, No. 55 in the Brand Finance US Top 100, and No. 65 in Millward Brown's annual BrandZ survey of the Top 100 Most Valuable Global Brands.  In 2015, PayPal was ranked No. 18 in Havas Media's Top Global Meaningful Brands Index.  In addition, PayPal was ranked in the top 100 brands by Interbrand in both 2015 and 2016.

**Pandora's Infringing and Diluting "P" Logo**

29.     Pandora is a leading app for music streaming.  For years, including since the 2014

adoption of the PayPal Logo, Pandora and PayPal have coexisted, without confusion, because

their P logos historically have been quite different both in their overall look and feel and in their

particular elements:

 PayPal Logo Adopted
in 2014: Trademark
Serial Number
86/264,546

 Pandora logo as of
2014: Trademark
Registration Number
4,396,691

[remainder of page intentionally left blank]

30.     Although Pandora has used, registered, and applied to register various iterations of its logo over the years, all of them prior to the Pandora Logo were readily distinguishable from PayPal, as shown below:

| Trademark | Serial or Reg.  No. |
|---|---|
|  | Pandora Trademark Registration No. 4,396,690 |
|  | Pandora Trademark Registration No. 4,522,047 |
|  | Pandora Trademark Registration No. 4,522,048 |
|  | Pandora Trademark Serial No. 85/100,558 |
|  | Pandora Trademark Serial No. 85/100,559 |
|  | Pandora Trademark Serial No. 85/100,561 |
|  | Pandora Trademark Serial No. 85/100,563 |

31.     In or about October 2016, Pandora changed course – moving abruptly into trademark territory that is uniquely PayPal's in the eyes of consumers and the law.

32.     On October 12, 2016, Pandora unveiled the Pandora Logo through a press release, which described the new mark and associated branding as demonstrating the next phase of Pandora's products and the evolution of personal music experiences in the digital space.  At the same time, Pandora unveiled a new digital campaign geared towards converting millions of its free listeners into paying subscribers to its ad-free service – a campaign that heavily featured the Pandora Logo.  Both the press release and the new digital media campaign were met with significant media coverage, much of which noted the similarity between the PayPal Logo and the Pandora Logo.

33.     Pandora launched the Pandora Logo as part of an effort to overcome serious commercial challenges that threaten its very survival.  As a streaming music service known mostly for its free-to-consumers version, Pandora has no obvious path to profitability.  It also faces overwhelming competition from Spotify, Apple Music, Amazon Music, and other successful streaming platforms.  It was against this backdrop that Pandora deserted its longstanding logo and latched itself on to the increasingly popular PayPal Logo as part of its efforts to catch up to its competition.

34.     More specifically, Pandora abandoned its years of use of a serifed, countered P logo, typically presented within a square box and including the word "Pandora" in a dark navy or midnight blue.  Instead, it adopted a mark that mimics the PayPal Logo in almost every respect. Pandora's Creative Director, Julie Scelzo, publicly noted that Pandora's new logo went through more than one thousand iterations before Pandora settled upon the infringing mark.  *See* John

Paul Titlow, "Pandora Rebrands For the First Time in 11 Years," Co.Design (Oct. 12, 2016),
*available at*: https://www.fastcodesign.com/3064564/pandora-overhauls-its-branding-to-look-
the-way-music-sounds (last accessed May 16, 2017).

35.     As is clear simply from the sheer number of possibilities that Pandora's creative
team explored, Pandora was not limited to designs similar to the PayPal Logo.  Pandora's new
logo nevertheless incorporates the key elements of the famous and distinctive PayPal Logo,
including the minimalist look and feel, the blue color palette, and the counterless sans serif
capital P, as shown below.  As set forth above, the PayPal Logo incorporates these distinctive
elements to symbolize energy, community, innovation and progress.  Pandora has appropriated
these key elements of PayPal's Logo in an effort to reinvent its longstanding logo and convey a
vibrant, bold, forward-looking service akin in customer focus to PayPal's.



36.     The Pandora Logo dilutes the distinctiveness of the PayPal Logo.  As noted,
Pandora's new logo shares with the PayPal Logo a clear overall similarity and numerous specific
elements:  the blue color palette, absence of framing, minimalist stylization, sans serif font, and
counterless letter P.  These similarities of the Pandora Logo hamper – and will continue to
hamper over time, unless enjoined – PayPal's efforts to ensure that the PayPal Logo serves as a

unique identifier for its services.  This alone, even without a showing of actual or likely consumer confusion, is injurious to PayPal.

37.     Pandora's amalgamation of PayPal's longstanding design elements to create its revised branding scheme compounds the harm to PayPal's ability to utilize the PayPal Logo to identify its services in the marketplace.  If consumers cannot identify PayPal's services quickly in the marketplace via the PayPal Logo, PayPal risks losing transactions and its brand will suffer.

38.     There is a demonstrable nexus between PayPal's and Pandora's services, starting with the fact that the companies are in direct competition for the precious "real estate" on the screens of consumers' mobile devices.  Consumers also use PayPal to pay for their Pandora subscriptions.  This nexus is also shown by the numerous use-based trademark registrations in the United States that cover both music-entertainment services and payment-processing services. Indeed, as shown above, even Pandora promotes PayPal as a way to pay for Pandora services, and it does so by displaying the PayPal Logo.  PayPal, in addition, has promoted its services via advertisements on Pandora's Internet radio service.

[remainder of page intentionally left blank]

**The Harm to PayPal's Customers and Brand**

39.     Immediately after Pandora's adoption of the Pandora Logo, the obvious and striking similarities between it and the PayPal Logo were widely recognized in news articles and in user comments online, demonstrating a clear and immediate public association between the marks.  This unwarranted association continues and will continue to lessen the distinctiveness of the PayPal Logo, to the detriment of PayPal's customers and its brand, as shown by the below examples of public commentary:













- Jan 2

that moment you thought you clicked P for **Paypal**...but you clicked the P for **Pandora** & Boosie starts playing while you're at your desk. LOL

- Jan 3

**Paypal** and **Pandora** apps look alike and It's so annoying bc I'm always clicking the wrong one 😑😑😑😑

♥ 1

**2+ Follow**

A company that needs a new logo IMO: #Pandora. Reason? I think Paypal when I see it. #logodesign #timeforachange #brand

LIKE
1

7:57 PM - 10 Jan 2017

♥ 1



Dear #Pandora
Please stop teasing me. The "P" that pops up keeps making me think I have random money from #PayPal

LIKE
1

1:49 PM - 15 Feb 2017



The fact that pandora and PayPal have app icons that look basically the same is really annoying. My brain can't keep this straight 😭

8:01 AM - 17 Feb 2017



40.    Pandora's use of its infringing and diluting mark thus is causing and is likely to cause confusion as to whether Pandora's services originate from or are sponsored by PayPal, and as to whether there is an association or affiliation between Pandora and PayPal.  Some consumers, as shown above, have even been confused into believing, based on the Pandora Logo, that PayPal has purchased Pandora.

41.    Pandora's acts also are diluting and likely to dilute the famous PayPal Logo by whittling away its unique source-identifying quality.  PayPal has invested significant time, money, and energy into ensuring that the PayPal Logo clearly and uniquely identifies PayPal in

the marketplace, particularly on mobile devices.  Indeed, as demonstrated above, consumers have

described a "struggle" and expressed frustration and annoyance for having mistakenly clicked on

the wrong mobile app, having tried to listen to music through PayPal and having attempted to

send money through Pandora.  The social media posts emphasize that Pandora's infringing and

substantially similar mark has diminished PayPal's ability to ensure that the PayPal Logo

identifies PayPal in the marketplace.

42.      Pandora's infringing and diluting activity is especially egregious and harmful

because of its impact on mobile apps.  PayPal and Pandora directly compete for real estate on the

screens of mobile devices.  Having a distinctive, non-confusing logo is critical in the mobile

space.  Mobile screens are small and crowded.  Consumers depend on strong and unique logos

and distinctive color schemes to quickly and reliably find the app they want to use.  Pandora's

infringement and dilution interferes with this critical function, and with the frictionless user

experience that is central to PayPal's success.

43.      This confusion and dilution cause substantial harm to PayPal.  PayPal does not

want its customers to be deceived into believing that PayPal is losing its focus on payments by

moving into music streaming services.  PayPal also does not want retailers and other business

partners who are involved in the music or streaming businesses to believe that PayPal is now

becoming their competitor through the purchase of Pandora.

44.      PayPal is harmed in particular by the confusion caused by the similar look of the

logos on consumers' mobile devices.  PayPal's business model is built on ensuring a frictionless

and secure payment experience.  The difficulty in finding and accessing the PayPal app on a

mobile device caused by the Pandora Logo undercuts this goal.  PayPal will lose transactions if

their customers open the wrong app and abandon their plan to utilize PayPal out of annoyance, or

purposely avoid the PayPal app out of fear that they will inadvertently play music in untimely situations if they attempt to use the app.

**PayPal's Attempts to Resolve This Dispute Amicably**

45.     Shortly after Pandora unveiled its new logo, PayPal contacted Pandora, seeking to amicably resolve this dispute and to relieve consumers' frustrations.  PayPal's initial letter was met by silence from Pandora.  PayPal spoke to Pandora by phone to raise its concerns, and Pandora claimed it was unaware of any confusion.  PayPal then wrote again and provided over 110 pages of examples of consumer confusion and chatter about the similarities of the new logo.

46.     These efforts by PayPal proved fruitless.  Pandora abruptly ended the discussions by making clear early on that it did not acknowledge the consumer confusion or frustration being experienced by PayPal's users and was not willing to engage in future discussions.

47.     Unable to amicably resolve the dispute, PayPal, though reluctant to sue a business partner, had no choice but to file suit to protect its consumers and its brand.

**COUNT ONE**

**(False Designation of Origin
Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

48.     PayPal repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49.     As noted above, the Pandora Logo, which has been promoted, distributed, and used in commerce, features a trademark that is confusingly similar to the PayPal Logo and implies that the Pandora Logo comes from the same source as PayPal's products.  Such implications are false, confusing to consumers, and material to consumers' purchasing decisions.

50.    Pandora's unauthorized use of the Pandora Logo in connection with the distribution or sale of its services falsely suggests that these services are connected with, sponsored by, affiliated with, or related to, PayPal.

51.    Pandora's unauthorized use of the Pandora Logo constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

52.    Pandora's conduct has damaged PayPal and will, unless enjoined by the Court, further impair the value of PayPal's name, reputation, and goodwill.  This harm constitutes an injury for which PayPal has no adequate remedy at law.

## COUNT TWO

**(Trademark Dilution**
**Under the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c))**

53.    PayPal repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

54.    The PayPal Logo is a famous mark that is widely recognized by consumers, businesses, and industry around the globe, and that identifies the services of PayPal in the minds of consumers.  Pandora's unauthorized use of the infringing mark began after PayPal's mark had become famous.

55.    Pandora's unauthorized use of the Pandora Logo in connection with the distribution or sale of its services dilutes, and will continue to dilute, the distinctiveness of the PayPal Logo, which consumers, businesses, and industry now associate uniquely with PayPal and its services.

56.    Pandora's unauthorized use of the Pandora Logo has, and will continue to have, an adverse effect upon the value and distinctive quality of the PayPal Logo.  Pandora's acts blur and whittle away at the distinctiveness and identity-evoking quality of the PayPal Logo.

57.     Pandora's acts dilute the value of PayPal's goodwill in connection with the PayPal Logo and destroy the exclusive association between PayPal and its PayPal Logo.

58.     Pandora's acts constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

59.     The aforementioned acts of trademark dilution have caused, and are causing, irreparable injury to PayPal.  Unless enjoined by the Court, Pandora will continue to dilute the distinctiveness of the PayPal Logo, causing further irreparable injury to PayPal for which there is no adequate remedy at law.

## COUNT THREE

### (Trademark Infringement Under New York Common Law)

60.     PayPal repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61.     The aforementioned acts of Pandora constitute trademark infringement in violation of New York law.

62.     Pandora's conduct has damaged PayPal and will, unless enjoined by the Court, further impair the value of PayPal's name, reputation, and goodwill.  This harm constitutes an injury for which PayPal has no adequate remedy at law.

## COUNT FOUR

### (Trademark Dilution
### Under New York Law, N.Y. G.B.L. § 360-l)

63.     PayPal repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

64.     The PayPal Logo is a distinctive mark that is widely recognized by consumers, businesses, and industry, and that identifies the services of PayPal in the minds of consumers.

65.     Pandora's unauthorized use of the Pandora Logo, which is substantially similar to the PayPal Logo, dilutes the strength of the PayPal Logo, resulting in damage to PayPal and the substantial business and goodwill symbolized by the PayPal Logo in violation of New York General Business Law § 360-l.

66.     The aforementioned acts of trademark dilution have caused, and are causing, irreparable injury to PayPal.  Unless enjoined by the Court, Pandora will continue to dilute the strength of the PayPal Logo, causing further irreparable injury to PayPal for which there is no adequate remedy at law.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, PayPal demands trial by jury, and respectfully prays:

A.     That Pandora and all those in active concert or participation with Pandora (including, but not limited to, Pandora's officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) be permanently enjoined from:

> 1.     manufacturing, distributing, shipping, advertising, marketing, promoting, selling, offering or making available for sale, display or download or otherwise making any other use of the Pandora Logo or any other logo confusingly similar to the PayPal Logo, and in particular, any logo featuring a block-style, minimalist, sans serif and counterless blue P; and

> 2.     representing, by any means whatsoever, that any products or services manufactured, distributed, shipped, advertised, marketed, promoted, sold, or offered or made available for sale by Pandora are PayPal's products or services or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of retailers, purchasers or consumers as to the origin or sponsorship of such products and services; and

> 3.     doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead retailers, purchasers or consumers into the belief that Pandora's products come from PayPal or are somehow sponsored or licensed by, or associated or affiliated with, PayPal or its products.

B.      That Pandora and those in active concert or participation with Pandora (including, but not limited to, Pandora's officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the confusingly similar Pandora Logo, including, but not limited to, corrective advertising directed to consumers, and recalling from any and all channels of distribution any and all products or services featuring the Pandora Logo.

C.      That PayPal be awarded damages pursuant to New York law and 15 U.S.C. § 1117.

D.      That PayPal be awarded punitive damages pursuant to New York law in view of Pandora's intentional and willful trademark infringement and other conduct.

E.      That PayPal be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to New York law and 15 U.S.C. § 1117.

F.      That Pandora file with the Court, and serve on counsel for PayPal within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Pandora has complied with any injunction which the Court may enter in this action.

[remainder of page intentionally left blank]

G.      That PayPal have such other and further relief as the Court may deem just and

proper.

Dated:  New York, New York
        May 19, 2017

                              DEBEVOISE & PLIMPTON LLP


                              By: /s/ Jeremy Feigelson
                                  David H.  Bernstein
                                  (dhbernstein@debevoise.com)
                                  Jeremy Feigelson
                                  (jfeigelson@debevoise.com)
                                  Megan K. Bannigan
                                  (mkbannigan@debevoise.com)
                                  Jennifer F. Mintz
                                  (jfmintz@debevoise.com)
                                  919 Third Avenue
                                  New York, New York  10022
                                  (212) 909-6000 (telephone)
                                  (212) 521-7696 (facsimile)

                                  *Attorneys for Plaintiff PayPal, Inc.*